**In re Albert C. WITCHARD, Sr., Debtor.**

**No. 8:05–bk–14099–CPM.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 9, 2006.

Albert C. Witchard, Sr., Saint Petersburg, FL, pro se.

---

## ORDER RECONSIDERING ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN FAVOR OF MIDFIRST BANK

CATHERINE PEEK McEWEN,
Bankruptcy Judge.

THIS CASE came before the Court for a continued confirmation hearing on August 2, 2006. The Court announced its intent, on its own motion, to enter an order reconsidering its Order Granting Motion for Relief from the Automatic Stay in Favor of Midfirst Bank entered on June 28, 2006 (Docket No. 33) (the "Stay Relief Order"), which permits Midfirst Bank to file and prosecute a foreclosure action as against the Debtor's homestead, and schedule a hearing on such reconsideration, based on the following findings:

1. During the course of the August 2, 2006, hearing, it came to the Court's attention that the Debtor, who is a *pro se* gentleman, apparently does not always receive service copies of papers filed in this case. The Court takes judicial notice from the petition that the Debtor's physical, or homestead, address is different from the one listed on his petition as his mailing address, which is another physical address and not a post office box address. The petition was prepared by a petition preparer. The mailing address is apparently the Debtor's daughter's address.

2. At the August 2, 2006, hearing, the Debtor stated that he did not authorize mail to be sent anywhere but his home address, notwithstanding what the petition states, and he requested the Court to send all papers to his home address, 220 49th Street North, St. Petersburg, FL 33710 from now on. The Debtor also stated that he did not know that the Court had entered the Stay Relief Order because he did not receive it, and he disputed that grounds existed to warrant its entry, especially because, he alleges, Midfirst Bank has been returning tendered checks instead of cashing them.

3. The Court takes judicial notice from the record of this case that the Court entered the Stay Relief Order based on an alleged default by the Debtor on "adequate protection" payments this Court previously ordered him to pay to Midfirst Bank on a monthly basis. The Debtor's adequate protection obligations and the consequences of failing to meet those obligations are specified in the Court's Order Denying Midfirst Bank's Motion for Relief from Stay and Granting Adequate Protection entered on January 13,2006 (Docket No. 21) (the "Adequate Protection Order").

4. The Court takes judicial notice from the record of this case that the Adequate Protection Order requires that a specific procedure be followed by Midfirst Bank in the event of an alleged payment default in order for Midfirst Bank to be entitled to relief from the automatic stay. The procedure includes the giving of telephonic notice to the Debtor that he is in default and

that he has an opportunity to cure the specified default within 72 hours.

5. The Court takes judicial notice from the record of this case that Midfirst Bank did not follow the procedure specified in the Adequate Protection Order as a condition of entitlement to an order granting relief from the automatic stay. The affidavits filed in support of the Stay Relief Order do not aver that the Debtor was given telephonic notice of the alleged default or that anyone even attempted to give him telephonic notice but could not,* nor did Midfirst Bank file any motion seeking relief from the requirement to provide him telephonic notice. Instead, one of the affidavits avers that a certified letter was sent, but there is no averment that the letter was received or by whom.

6. Many *pro se* debtors are not able to traverse the territory of the Bankruptcy Code without encountering some difficulty. It is apparent to the Court that the Debtor in this case falls in that category, based on some of the comments and questions he raised during the August 2, 2006, hearing.

 Under the facts found above, the Court is concerned that it entered the Stay Relief Order in error and perhaps without sufficient notice to the Debtor prior to its entry for him to either cure the alleged default or contest the allegation of the existence of a default. The United States Court of Appeals for the Eleventh Circuit instructs trial judges, such as the undersigned, to treat *pro se* litigants, such as the Debtor, with "special care" because they " 'occupy a position significantly different from that occupied by litigants represented by counsel.' " *Johnson v. Pullman, Inc.,* 845 F.2d 911, 914 (11th Cir.1988), (quoting *Moore v. Florida,* 703 F.2d 516,

520 (11th Cir.1983)). The Court reasoned that "[g]iven the unique status of *pro se* litigants in our court system," it would be inappropriate in *pro se* cases to automatically apply the rules the same way as "in cases where parties are represented by attorneys presumably schooled in established court procedures." *Id.* In consideration of this matter, the court is "[m]indful of the incessant command of the court's conscience that justice be done in light of *all* of the facts." *Id.* (emphasis in original) (quoting *Griffin v. Swim–Tech Corp.,* 722 F.2d 677, 680 (11th Cir.1984)).

Accordingly,

IT IS ORDERED that the Court cannot hold the Debtor in this case to established court procedures requiring him to have timely moved for reconsideration of the Stay Relief Order if he disagreed with it. Given the particular and narrow factual circumstances presented in this matter, the Court on its own motion will reconsider the Stay Relief Order at a hearing to be held on **August 15, 2006, at 9:30 a.m.** in Courtroom 8B, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602. The Court requests that the Debtor bring proof that he has tendered to Midfirst Bank all monthly payments required under the Adequate Protection Order.

DONE AND ORDERED on August 09, 2006, *nunc pro tunc* to August 2, 2006.

---

\* The Court notes the Debtor's long-term work history of 27 years with the City of St. Petersburg (see Docket No. 1) and believes that telephone contact could have been made through that employer, at the very least by leaving a message requesting a return call.